**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2391
_____

NORMAN WILLIAMS, JR.,
                                    Appellant

v.

JAMEY LUTHER, Superintendent; NURSE FREEDMAN; BRAD MCDERMOTT,
Food Services Manager; JOHN CREE, Correctional Program Manager; MICHAEL
HOUSER, Deputy Superintendent; T. GRANT, Unit Manager; JAMES MAIMONE,
Registered Nurse; ANGELA SAYLOR, Registered Nurse; JILL BRANT, Nurse Practi-
tioner*
*(Dismissed per Clerk's Order dated 04/09/2025)
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 3:20-cv-00030)
Magistrate Judge:  Honorable Kezia O.L. Taylor (by consent)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
on October 27, 2025

Before: BIBAS, CHUNG, and BOVE, Circuit Judges

(Opinion filed: October 31, 2025)
_____

_____

OPINION*

_____

PER CURIAM

Pro se appellant Norman Williams, Jr., appeals from the District Court's order granting summary judgment to the defendants. We will affirm.

I.

On September 1, 2017, Williams was temporarily transferred from a State Correctional Institution in Somerset, Pennsylvania ("SCI-Somerset") to an Institution in Laurel Highlands, Pennsylvania ("SCI-LH"). Predating this transfer, Williams had been diagnosed with keratoconus—a serious eye condition that causes gradual deformation of the corneas. This condition may be managed with prescription hard contact lenses that must be removed and cleaned regularly. While at SCI-Somerset, Williams was permitted to keep supplies in his cell for regular removal and cleaning of his lenses, even after he was transferred to the Restricted Housing Unit ("RHU") following a disciplinary infraction. However, when Williams arrived at SCI-LH, he was denied access to his medical supplies because the Program Review Committee ("PRC") had yet to review and approve the request. During his intake process, Williams informed a nurse, James Maimone, that he was wearing hard contact lenses that needed to be regularly removed and cleaned, but Maimone did not note this information in Williams' chart. Nursing staff approved

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Williams' request for his lens equipment, "if approved by PRC," and forwarded the request to the PRC that same day.

The PRC met on September 7, 2017, and issued its approval for these supplies, but Williams' receipt of his medical equipment was nonetheless delayed an additional two days. In sum, Williams was denied access to his lens equipment for about eight days. During this delay, Williams requested one sick call and filed two grievances, but the mental health staff that met with Williams daily did not log any report of eye irritation or pain. In response to one of Williams' grievances, the PRC admitted that the delay was due to a "misunderstanding between Medical and PRC" and committed to the implementation of a new procedure to prevent this situation from reoccurring.

In the month that followed, Williams' vision declined, and his ocular pain increased. Williams met with two outside specialists who ultimately recommended a cornea transplant to treat the deterioration of his condition. Williams had the surgery in February 2018. Williams claimed he nearly died due to procedure complications and that the surgery recovery process caused him significant pain and suffering.

In 2019, Williams filed suit under state law against numerous officials employed at SCI-LH. The case was removed from state court, and Williams has amended his complaint several times in the District Court. In April 2023, Williams filed the operative fifth amended complaint against defendants Jamey Luther, Brad McDermott, John Cree, Michelle Houser, James Maimone, Angela Saylor (collectively, "DOC Defendants") and Jill Brant, wherein he alleged their deliberate indifference to his serious medical needs

constituted a violation of the Eighth Amendment.[1]  Specifically, Williams claimed that his delayed receipt of vital medical supplies caused him significant pain and necessitated his eventual risky cornea transplant five months later.  He further alleged that supervisory defendants McDermott, Luther, and Houser knew or should have known that the policy requiring PRC approval for medical supplies created an "obvious and/or unreasonable risk of injury, harm or death" to SCI-LH inmates.

At the close of discovery, the parties filed cross-motions for summary judgment. DOC Defendants moved for summary judgment on the grounds that, although Williams' keratoconus was a serious medical condition, the record failed to show that Defendants were deliberately indifferent to Williams' medical needs, and, even if they had been indifferent, Williams nonetheless failed to establish a causal connection between their indifference and his alleged harm.  The District Court (a Magistrate Judge proceeding with the consent of the parties) agreed with DOC Defendants on both points and granted their motion.  Williams timely appealed.[2]

---

[1] Defendant-Appellee Brant has been dismissed from this appeal.

[2] We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over the District Court's summary judgment decision.  See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

II.

The District Court determined that no reasonable jury could conclude that any of the defendants acted with deliberate indifference: the members of the PRC because, while their delay in meeting might have been negligent, there was no evidence that they consciously ignored a threat to Williams' health by not immediately providing his equipment; and the nurses because Williams did not point to evidence that, after his intake, he told them of his continued need for his equipment.

In his appellate brief, Williams does not challenge that analysis. Instead, he argues that, because he claims that he was harmed by an unconstitutional policy, "[t]here is no need to show deliberate indifference on behalf of Houser or any other defendant." But that is not accurate. "[A] local government may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, . . . inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). "Given that Monell claims allow for municipal liability for the constitutional violations of their employees only where the municipality's policy or custom led to the violation, there can be no liability under Monell without an underlying constitutional violation." Codrington v. Dolak, 142 F.4th 884, 896 (6th Cir. 2025) (quotation marks omitted); see also Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) ("[A]ny claim that supervisors directed others to violate constitutional rights necessarily includes as an element an actual violation at the hands of subordinates."). As the Appellees point out, by failing to challenge the District Court's deliberate indifference holding, Williams has forfeited this

dispositive issue.  See LabMDInc. v. Boback, 47 F.4th 164, 191 (3d Cir. 2022) ("The failure to challenge an independent basis for a district court's decision is fatal to an appeal.").

Moreover, even if the issue were not forfeited, we do not believe that the District Court erred in determining that Williams had not presented evidence to show that any defendant knew of and "disregard[ed] an excessive risk to [his] health or safety[.]"  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  The daily medical records from this period do not record any complaints from Williams about trouble with his eyes.  And while Williams did file two grievances raising this issue, it is not apparent, on this record, that DOC Defendants had reason to know that their slow dispatch would cause a substantial risk to Williams' health.  See generally Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017).

IV.

For the aforementioned reasons, we will affirm the decision of the District Court.